Charles **DONLEY**, Administrator of the Estate of Carl Edward Donley, a minor, deceased, Plaintiff,

v.

**WHIRLPOOL CORPORATION**, a Delaware corporation, Defendant and Third-Party Plaintiff,

v.

**GENERAL ELECTRIC COMPANY**, a corporation, and Drake Manufacturing Company, a corporation, Third-Party Defendants.

Civ. A. No. 23629.

United States District Court
E. D. Michigan, S. D.

Sept. 30, 1964.

William J. Weinstein, Gussin, Weinstein & Kroll, Detroit, Mich., McMath, Leatherman, Woods & Youngdahl, Little Rock, Ark., for plaintiff.

Peter Armstrong, F. William Hutchinson, Varnum, Riddering, Wierengo & Christenson, Grand Rapids, Mich., for Whirlpool Corporation.

W. P. Cooney, Ward, Plunkett, Cooney, Rutt & Peacock, Detroit, Mich., for General Electric Co.

Arthur R. Snell, Stephen C. Bransdorfer, Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., for Drake Mfg. Co.

FREEMAN, District Judge.

This is an action by the administrator of the estate of Carl Edward Donley, a deceased minor, against Whirlpool Corporation, a Delaware Corporation, for negligence and also for breach of express and implied warranties in the sale of a gas range to the grandfather of the deceased child in Arkansas. The plaintiff alleges that as a result of a faulty lamp and lamp socket in the stove, an electrical current short circuit occurred, which melted and welded the contacts of the lamp base and therefore charged the gas line connected to the stove with electric current. Plaintiff's decedent, a four year old child, while playing in his grandfather's home on May 18, 1961, came in contact with the gas line and was electrocuted.

The defendant Whirlpool Corporation impleaded as third-party defendants General Electric Company, manufacturer of the lamp, and Drake Manufacturing Company, manufacturer of the socket. Service of process was accordingly made on the secretary of the Drake Manufacturing Company in Cook County, Illinois, the place of the company's home office.

The case is now before the court on a motion by Drake (1) to vacate the order granting the motion of Whirlpool for the filing and service of the third-party complaint against Drake; (2) to quash the return of service of process in Illinois; and (3) to dismiss the third-party complaint for lack of jurisdiction over Drake.

There is no dispute as to the relevant statutory provisions under which service of process was made outside the borders of the State of Michigan against a foreign corporation not domiciled in Michigan.

Rule 4(d) (7) of the Federal Rules of Civil Procedure provides that service upon a foreign corporation is sufficient "if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner pre-

scribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

The applicable Michigan Court Rule is GCR 105, the pertinent portions of which provide:

"Service of process upon a corporation, whether domestic or foreign, may be made by (1) leaving a summons and a copy of the complaint with any officer * * *." (Rule 105.4)

"Service of a summons and a copy of the complaint, as hereinbefore provided, shall confer personal jurisdiction over a defendant having any of the contacts, ties, or relations with this state as specified in RJA Chapter 7, by giving notice to the defendant of the pendency of the action and an opportunity to defend. There is no territorial limitation on the range of the service of such notice." (Rule 105.9)

Under the relevant provision of the Michigan Revised Judicature Act, M.S.A. § 27A.711, P.A.1961, No. 236:

"The existence of any of the following relationships between a corporation and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise general personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation.

"(1) Incorporation under the laws of this state.

"(2) Consent, to the extent authorized by the consent.

"(3) The carrying on of a continuous and systematic part of its general business within the state."

Thus, extraterritorial service of process upon the secretary of Drake Manufacturing Company, a foreign corporation, was authorized by Michigan Court Rule 105 and, therefore, by Federal Rule 4(d) (7), provided Drake was subject to jurisdiction of Michigan courts by virtue of M.S.A. § 27A.711. State law rather than federal law governs the question of personal jurisdiction of a federal court over a foreign corporation in a diversity case. Velandra v. Regie Nationale Des Usines Renault and Renault, Inc., 336 F.2d 292 (CA 6, decided September 10, 1964); Smartt v. Coca-Cola Bottling Corporation (CA 6, 1963), 318 F.2d 447; Singleton v. Atlantic Coast Line Railroad Company, 20 F.R.D. 15 (E.D.Mich.1956).

The third-party plaintiff, Whirlpool, contends that Drake is subject to jurisdiction in Michigan under M.S.A. § 27A.-711 because of "the carrying on of a continuous and systematic part of its general business within the state." Drake, on the other hand, denies that it has such "contacts, ties, or relations" with the State of Michigan as to render it subject to service of process in Illinois under GCR 105. Drake also contends that its subjection to jurisdiction in Michigan would constitute a violation of due process, for lack of the minimum contacts with Michigan that due process requires, according to International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The issues, therefore, are clearly drawn: (1) was Drake, during the period in question, carrying on a continuous and systematic part of its general business in Michigan within the meaning of M.S.A. § 27A.711, so as to be subject to the jurisdiction of a federal district court in Michigan in a diversity case, and (2) would subjection of Drake to general in personam jurisdiction in Michigan under M.S.A. § 27A.711 constitute a violation of due process of law?

There is no factual dispute over the nature of Drake's activities relating to the State of Michigan. Drake owns no property in Michigan, conducts no manufacturing activities in Michigan, and has no agents or employees residing or working in Michigan. Drake does, however, utilize the services of an independent

non-exclusive manufacturer's representative located in Detroit to solicit orders in Michigan. This representative also acts for as many as nine other clients unrelated to Drake, and Drake has no control over the activities of the representative except for a mutual agreement that the latter utilize ethical business practices customary to the trade. This representative, Grant Shaffer Company, has no authority to contract or incur obligations for Drake. Orders solicited by Shaffer are transmitted to Drake in Illinois, where they are subject to acceptance or rejection. Deliveries are made by interstate carrier from stock manufactured and stored outside of Michigan, with title passing to the customers in Illinois and not in Michigan. Payments by purchasers are made directly to Drake in Illinois, and Shaffer receives for its services a commission from Drake on all sales in Michigan. In the three-year period from 1961 to 1963, Drake made a total of 810 sales and 1302 shipments to 110 separate customers in Michigan. These sales, which amounted to more than $247,000, constituted an average of 5.8% of Drake's total sales during the three-year period. Shipments were made at the average rate of more than one a day to customers in Michigan during this period.

█ The meaning of the words "continuous and systematic" in M.S.A. § 27A.711 does not appear to have been construed as yet in reference to the business of a foreign corporation in Michigan. The committee comments covering M.S.A. § 27A.711(3) and also GCR 105 indicate clearly that the Michigan legislature intended to codify the principles laid down by the Supreme Court in International Shoe and following cases. Jurisdiction over a nonresident corporation must, therefore, be sustained under M.S.A. § 27A.711(3) if the corporation has minimum contacts with the state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

In Velandra v. Regie Nationale Des Usines Renault and Renault, Inc., supra (CA 6, decided September 10, 1964), 336 F.2d 292, the Sixth Circuit Court of Appeals stated:

"In determining whether minimum contacts exist on the basis of the presence or sale of a product within a state, the extent of the contact is related to a number of factors, including the number and value of sales within the state, their ratio to the total market for like or similar products within the state, the quantity or value of the defendant's production, the percentage of the total output sold within the state, as well as the nature of the product, particularly with reference to whether it is inherently dangerous or not."

██ On the basis of the above enumerated factors which relate to known facts, it would be fair to say that Drake had a significant market within the State, and not merely casual or isolated sales. Over the three-year period, Drake made 810 separate sales to Michigan customers, amounting to more than $247,000. These sales averaged 5.8% of the company's total sales of roughly $4,200,000 in the same period. Moreover, such sales and shipments by Drake at the average rate of more than one a day may quite properly be considered as "a continuous and systematic part of its general business within the state" pursuant to M.S.A. § 27A.711. The Court concludes that the extent of Drake's contact with Michigan is sufficient to subject it to general in personam jurisdiction in Michigan.

In two recent cases in this district, Chovan v. E. I. Du Pont de Nemours & Company, D.C., 217 F.Supp. 808, and Hoffa v. National Broadcasting Company, 213 F.Supp. 895, the volume of business of nonresident corporations in Michigan was also relied on as a factor in determining that the corporations were subject to jurisdiction in Michigan. In Chovan, Judge McCree of this Court held that the defendant corporation was subject to limited personal jurisdiction under M.S.A. § 27A.715, in that the cause of action arose out of contacts of the corporation with the State. Nevertheless,

the Court went further to examine the contacts of the corporation with the State, apart from those giving rise to the suit, as a possible additional basis for jurisdiction, stating:

> "From the fact that defendant is the sole supplier of safety fuse and hot wire fuse lighters for Du Pont and other companies which distribute and sell explosives in Michigan, the fact that in each of the years 1957 and 1958, defendant Ensign-Bickford loaded onto common carriers destined for points in Michigan approximately fifteen million feet of fuse and the fact that the total dollar volume of products shipped to Michigan exceeded $130,000 in these years, the court finds such purposeful contacts with Michigan that a Michigan procedure which, upon adequate notice, requires the corporation to respond to a suit here does not offend traditional notions of fair play."

Similarly, in Hoffa, a case filed before the Michigan Revised Judicature Act took effect, Chief Judge Levin of this Court relied on the volume of business directed into the State as an important factor in determining that the defendant was subject to general in personam jurisdiction in Michigan. The defendant NBC maintained an office in Michigan, whose employees solicited advertising. NBC owned no radio or television stations in Michigan, but it was affiliated with a number of local stations and regularly and systematically sent program material to these stations via common carrier communications facilities. The Court, apparently relying on the sending of radio and television programs into Michigan by common carriers, rather than the presence of the office where advertising was solicited, as the basis of jurisdiction over NBC, stated:

> "Reference to the railroad cases cited above is instructive. A railroad's business is to provide certain transportation services. Where a railroad solicits customers within the state but does not provide the services within the state, the railroad is not amenable to process in Michigan; but where a railroad does even a small part of its business of providing transportation within Michigan, it is amenable to service of process here. If NBC did not supply its services to radio and television stations in Michigan but merely kept an office for the solicitation of advertising to be broadcast on its programs in other states, the cited railroad cases would be apposite."

Further, in London's, Inc. v. Mack Shirt Corp., 114 F.Supp. 883 (D.Mass. 1953), the continuous and systematic solicitation of orders through an independent agent in Massachusetts followed by interstate shipment of the goods from the foreign corporation directly to purchasers in Massachusetts was held to be a sufficient basis for in personam jurisdiction over the corporation in Massachusetts.

This Court reiterates its position taken in Berk v. Gordon Johnson Co., 212 F.Supp. 365 (E.D.Mich.1962), at 369: " * * * if due process is satisfied, a foreign corporation may be subject to the ordinary process of the state courts, although the business transacted may be entirely interstate in its character."

■ Drake contends that, under Michigan case law, mere solicitation of orders in the state by foreign corporations does not constitute doing business so as to subject them to service of process, citing, for example, Watson-Higgins Milling Co. v. St. Paul Milling Co., 256 Mich. 258, 239 N.W. 295 (1931), and Hellman v. Ladd, 315 Mich. 150, 23 N.W.2d 244 (1946). These cases are inapposite in that they precede the Revised Judicature Act, which took advantage of the more liberal standards of due process in International Shoe. Under the Revised Judicature Act, the test in Michigan is no longer whether the foreign corporation is doing business so as to be present in the State, but rather whether it is carrying on a continuous and systematic *part* of its general business in the State. This new test will support jurisdiction over a

foreign corporation which has minimum contacts with the State, at least where those contacts are continuous and systematic.

In Dolce v. Atchison, Topeka & Santa Fe Railway Co., 23 F.R.D. 240 (E.D. Mich.1959), relied on by Drake, service of process was quashed where, unlike the case at bar, there was no showing of any regular and continuous activity in Michigan, but only two isolated instances of solicitation of orders. In that case this Court stated (p. 243):

"It may well be that the Michigan Supreme Court will take advantage, at some future time, of the more liberal standards of due process of law contained in the International Shoe Co. case, supra, and allow a foreign corporation to be subjected to service within this state under circumstances that would not now be sufficient."

There is no reason to think that in light of Chapter 7 of the Revised Judicature Act, which according to its committee comments was founded on the principles of International Shoe, the Michigan Supreme Court would not now allow a foreign corporation to be subjected to service of process under circumstances which might not have been sufficient under older tests.

Drake also cites authority from other jurisdictions. For example, in Robbins v. Benjamin Air Rifle Co., 209 F.2d 173, 176 (1954), the Fifth Circuit Court of Appeals stated:

"It has been considered settled in Texas and generally elsewhere that mere solicitation of orders in a state, followed by shipment of goods into the state, does not constitute the doing of business which subjects the corporation to the service of process therein."

See also Bellar v. Lake Erie Chemical Co., 41 F.Supp. 676 (D.C.Mass.1941); Bishop v. Everson Mfg. Co., 50 F.Supp. 792 (D.C.N.Y.1943). However, these older cases are not persuasive, in light of the language of the Michigan Revised Judicature Act as applied to this defendant.

Drake also contends that its subjection to jurisdiction in Michigan under M.S.A. § 27A.711 of the Revised Judicature Act would constitute a violation of due process of law, because of Drake's alleged lack of contacts with Michigan sufficient to support general in personam jurisdiction.

As this Court said in Berk v. Gordon Johnson Co., supra, 212 F.Supp. at p. 369:

"Any resolution of the due process problem begins with International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 [1945]. In assaying the question of state court jurisdiction over foreign corporations, that case put to rest the 'consent' and 'presence' theories of jurisdiction formerly in vogue and adopted as a standard whether the foreign corporation had such 'minimum contacts' with the forum that the maintenance of the action would not offend 'traditional notions of fair play and substantial justice'."

In International Shoe, activities of salesmen in the State of Washington were held to be sufficient minimum contacts of a foreign corporation with the State to authorize service of process on the corporation without violating due process, where the suit related to the activities of the salesmen for the corporation in Washington.

In Perkins v. Benguet Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952), the Supreme Court went one step beyond its actual holding in the International Shoe case. In Perkins, the court held that continuous and systematic, though limited, business in the State of Ohio by a foreign corporation allowed service of process on the corporation, even though the suit did not arise out of activities of the corporation in the State. The holding in Perkins is direct authority for the constitutionality of M.S.A. § 27A.711(3), upon which the third-

party plaintiff relies to sustain jurisdiction in the case at bar.

Thus, if jurisdiction in the instant case is not necessarily supported by the actual *holding* of International Shoe, because the cause of action does not arise out of activities of the third-party defendant within the State of Michigan, it is, nevertheless, permissible to conclude that jurisdiction in the instant case is supported by the minimum contacts *standard* of International Shoe as that standard was reinterpreted by the Supreme Court in Perkins v. Benguet Mining Co. If Drake can be said to have continuous and systematic business in Michigan, then Drake has minimum contact with the State sufficient to subject the company to general in personam jurisdiction in Michigan under Michigan law without any violation of due process of law. The Perkins case so holds.

Such a conclusion finds support in Mc-Gee v. International Life Ins. Co., 355 U.S. 220, 222–223, 78 S.Ct. 199, p. 201, 2 L.Ed.2d 223 (1957), where the Court stated:

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it less burdensome for a party sued to defend himself in a State where he engages in economic activity."

"Traditional notions of fair play and substantial justice" are not offended by subjecting Drake to general in personam jurisdiction in Michigan where Drake has had significant contacts with the State by continuous and systematic sales and shipments of goods directly to customers within the State, constituting a small but nevertheless substantial portion of the company's total sales. Drake has made an average of nearly 6% of its total sales in Michigan. No showing has been made of the geographic spread of Drake's other business. However, it is conceivable, as a purely hypothetical proposition, that a corporation such as Drake could be doing a nationwide business through independent nonexclusive manufacturers' representatives in every state. Assuming, hypothetically, that the corporation's sales were reasonably well divided among the states, the corporation would, through the activities of its representatives and its interstate sales and shipments, be conducting systematic and continuous business activity in all fifty states. Yet the effect of a denial of jurisdiction for lack of "contacts, ties or relations" with these states would be to make a company doing business in this manner immune from suit in forty-nine of the fifty states, despite its nationwide business. The reasoning of the Supreme Court in McGee, quoted above, is inconsistent with such a result.

In Powell v. Sealectro, Inc., 205 F. Supp. 6 (D.Conn.1962), cited by Drake, a foreign corporation was held not to be subject to jurisdiction in Connecticut where independent sales representatives solicited orders which amounted to less than one per cent of the company's total sales, and the cause of action did not arise out of the corporation's activity in the State. The volume of business in the case at bar was substantially greater than that in Powell. Yet this Court does not wish to rely on a purely quantitative standard for jurisdiction. As the Supreme Court said in International Shoe, supra, 326 U.S. 310, at p. 319, 66 S.Ct. 154, at p. 159:

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot

be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. \* \* \* Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations."

Where the defendant in Powell filled orders in Connecticut which amounted to less than one per cent of the company's total sales, the company's "contacts, ties or relations" were so slight as to be practically nonexistent. In the case at bar, on the other hand, where shipments were made into Michigan at the average rate of more than one a day, this Court is persuaded that the nature and quality of the activity was sufficient to satisfy due process requirements. Inevitably the volume and continuity of business in the state are factors in determining whether the nature and quality of the activity justify service of process on a foreign corporation.

■ Incidental to the main controversy, Drake also suggests that the third-party complaint is fatally defective because of Whirlpool's failure to state a basis for federal jurisdiction under Rule 8(a) (1) F.R.Civ.P. Whirlpool contends, and this Court agrees, that its claim against Drake is ancillary and incidental to the principal action, and, hence, its third-party complaint need not plead any independent grounds of jurisdiction in this diversity suit. See Barron and Holtzoff, Federal Practice and Procedure, § 424; Moore's Federal Practice, Vol. 3, § 14.26.

The motion to vacate the order granting service, to quash the return of service and to dismiss the third-party complaint for lack of jurisdiction over the third-party defendant, is hereby denied. An appropriate order may be submitted.