**RAYMOND E. DANTO, ASSOCIATES, INC., a Michigan corporation, Plaintiff,**

v.

**ARTHUR D. LITTLE, INC., a Massachusetts corporation, Defendant.**

**Civ. A. No. 34234.**

United States District Court,
E. D. Michigan, S. D.

Sept. 16, 1970.

John E. S. Scott, William F. Bavinger, Jr., Dickinson, Wright, McKean & Cudlip, Detroit, Mich., for plaintiff.

Wolfgang Hoppe, Miller, Canfield, Paddock & Stone, Detroit, Mich., for defendant.

## OPINION

FREEMAN, Chief Judge.

In 1968 the plaintiff, Raymond E. Danto Associates, Inc., a Michigan cor-

poration, entered into a contract with the defendant, Arthur D. Little, Inc., a Massachusetts corporation, with its principal place of business in Massachusetts. That contract required the plaintiff to perform, and the defendant to pay for, certain subcontracting services on a project in Algeria on which the defendant was the principal contractor.

The present suit, commenced in Wayne County Circuit Court and then removed to this court, arises out of the defendant's failure to pay $41,371.35 allegedly due the plaintiff under that contract. The case is now before the court on defendant's motion to dismiss for lack of personal jurisdiction or, in the alternative, a change of venue to the United States District Court for Massachusetts.

▮ Whether the defendant's motion to dismiss should be granted depends upon state law, for as the parties correctly point out, a federal district court sitting in Michigan can only exercise personal jurisdiction over a foreign corporate defendant in a diversity case to the extent that such personal jurisdiction is authorized by Michigan law. Velandra v. Regie Nationale des Usines Renault, 336 F.2d 292 (6th Cir. 1964); Smartt v. Coca-Cola Bottling Corp., 318 F.2d 447 (6th Cir. 1963). Hence, in deciding if this court can exercise personal jurisdiction over the defendant, Arthur D. Little, Inc., Michigan law must be examined.

The Michigan statute that the parties deem applicable provides:

"The existence of any of the following relationships between a corporation and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise general personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation:

\* \* \* \* \* \*

"(3) The carrying on of a continuous and systematic part of its general business within the state." M.S.A. § 27A.711, M.C.L.A. § 600.711.

The Committee Comments covering M.S.A. § 27A.711(3), as this court has already noted in Donley v. Whirlpool Corp., 234 F.Supp. 869 (1964), indicate that this section was intended " \* \* \* to codify the principles laid down by the Supreme Court in *International Shoe* and following cases." 234 F.Supp. at 872. In International Shoe v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), the United States Supreme Court ruled:

" \* \* \* due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

Thus, personal jurisdiction over the present corporate defendant must be sustained under both M.S.A. § 27A.711(3) and due process if the defendant has maintained minimum contacts with the State of Michigan, provided that those minimum contacts have been continuous and systematic in nature.

The defendant, however, contends that it does not have the requisite minimum contacts under the above standard. This court, therefore, must examine the contacts which the defendant has had with the State of Michigan. Affidavits and answers to interrogatories filed by the parties indicate that the following are the facts upon which any decision must be based.

The plaintiff, Raymond E. Danto Associates, Inc., is a small management consultant firm with offices in Detroit, Michigan. The defendant, Arthur D. Little, Inc., is a research and development, engineering, management consulting organization furnishing services to customers throughout the world. The present contract arose after a representative of the defendant telephoned the plaintiff in Michigan, inquiring if the plaintiff would be interested in performing subcontracting services in Al-

geria and inviting the plaintiff to come to Massachusetts for negotiations. Although the parties dispute whether any negotiations did in fact occur in Massachusetts prior to the plaintiff's undertaking performance of the requested subcontracting services, they do agree that the defendant mailed its proposals for the contract terms to the plaintiff at its Michigan residence and that the contract was accepted by the plaintiff in Michigan.

That contract is only one of the defendant's connections with the State of Michigan. Since 1965 the defendant has entered into 104 contracts with Michigan residents to perform services for those residents at a billing price of $3,-641,490.70. During the year 1969 alone, gross billings to Michigan residents totalled $653,000.00, with 25 per cent ($163,250.00) of the services represented by that figure actually being rendered within the State of Michigan. The defendant has also estimated that approximately 25 per cent of its services under contracts with Michigan residents from 1965 to 1969 were performed in Michigan. Moreover, the defendant is now negotiating at least five contracts with Michigan residents, including one with the City of Detroit; billings under these contracts will be approximately $379,300.00. All of the defendant's proposals for service contracts were mailed to the customers within the State of Michigan. Finally, the defendant has mailed promotional literature to various corporate, financial, and governmental institutions located in Michigan, generally in response to requests from these institutions.

On the other hand, the defendant does not maintain an office in Michigan nor have any employees residing in Michigan. Neither does the defendant own property in Michigan; it has no Michigan mailing address, telephone listing, and is not qualified to do business in Michigan.

■ The question is, therefore, whether these connections between the defendant and the State of Michigan are sufficient minimum contacts to satisfy due process and M.S.A. § 27A.711(3)'s continuous and systematic requirement so that the defendant may be subjected to the personal jurisdiction of a federal district court sitting in Michigan. One fact which must be examined in resolving that question is whether the defendant corporation has availed itself of the privilege of conducting activities within the forum state; for in Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), the United States Supreme Court said, in analyzing the minimum contacts doctrine:

> "The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

Hence, unilateral acts by the plaintiff in the forum state, although directed at the non-resident defendant, do not constitute minimum contacts that will justify an *in personam* judgment against the defendant; instead, the initiation of some activity within the forum state by the foreign party is required.

■ In this case that requirement is met for as we have already noted, the defendant has: during the past five years sent proposals for 104 contracts into Michigan for acceptance by Michigan residents; and in 1969 performed services valued at approximately $163,-250.00 within the State of Michigan for Michigan customers. On these facts there can be no doubt that the defendant has purposefully availed "itself of the privilege of conducting activities within the forum state" of Michigan under the protection of Michigan laws, and that it has done so in a continuous and systematic manner.

■ A second factor to be examined in determining whether the defendant has adequate minimum contacts with the forum state to justify the exer-

cise of personal jurisdiction under due process and M.S.A. § 27A.711(3) is the volume of business carried on by the defendant in Michigan. Donley v. Whirlpool Corp., *supra;* Aftanase v. Economy Baler Company, 343 F.2d 187 (8th Cir. 1965); Chovan v. E. I. Du Pont De Nemours & Co., 217 F.Supp. 808 (E.D. Mich.1963). To reiterate, the present defendant has entered into service contracts valued at more than three million dollars with Michigan customers over the past five years; and of the $650,-000.00 billed to Michigan residents in 1969 for services, approximately 25 per cent, or $163,250.00, of those services were rendered within the state. The defendant has failed to cite, and this court has been unable to find, any decision involving such a large, continuous volume of business carried on within a state by a foreign corporation in which that volume did not constitute sufficient minimum contacts for the exercise of personal jurisdiction.

But the defendant argues that this court must compare the volume of defendant's sales within Michigan to its total sales volume in deciding whether minimum contacts exist sufficient to satisfy due process and M.S.A. § 27A.-711(3)'s "continuous and systematic" requirement. And although the defendant's volume of service contracts with Michigan residents may be substantial, that volume constitutes a relatively small percentage of its total service contracts. Indeed, the $653,000.00 billed to Michigan residents for services in 1969 represents only 3.15 per cent of the defendant's total 1969 billings to all its customers in the United States, exclusive of the federal government. Moreover, the defendant's 1969 gross billings to customers throughout the world was approximately $45,300,000.00 and only ⁴⁄₁₀ths of one per cent of this figure, or $163,250.00, represents services actually performed in the State of Michigan.

■ While the defendant is correct in alleging that a comparison between the volume of a defendant's sales within the forum state and its total sales volume is often made in determining whether minimum contacts exist, see, e. g., Donley v. Whirlpool Corp., *supra,* such a comparison is not required by due process or M.S.A. § 27A.711(3). In Chovan v. E. I. Du Pont De Nemours & Co., *supra,* Judge McCree found sales by a foreign corporation exceeding $130,000.00 during a two-year period to be sufficient minimum contacts to satisfy due process without discussing what percentage of the defendant's total sales volume that figure represented. And in Republic Supply Corp. v. Lewyt, 160 F.Supp. 949, 952 (E.D.Mich.1958), Judge O'Sullivan concluded:

"[Defendant's] business in Michigan has been substantial and continuous over the past ten years, during which time it sold some 52,554 vacuum cleaners, totalling just less than two million dollars of gross revenue. In the year 1954, prior to its contractual relationship with plaintiff, the defendant's sales in Michigan were $199,290; in the first year of plaintiff corporation's distributorship, the sales of defendant's product in Michigan amounted to $248,265. The 1956 sales amounted to $210,175. In the first nine months of 1957, and up to the time of cancelling its contract with plaintiff, the sales amounted to $109,550. The evidence offered by defendant indicated that Michigan sales constituted only three and one-half percent of the national sales. *This representative percentage is not of great importance, and does not detract from the fact that the defendant was doing a substantial and continuous business in Michigan.* (Emphasis added.) 160 F. Supp. at 952.

Moreover, the Michigan Court of Appeals sustained the entry of a personal judgment against a foreign corporate defendant under due process and M.S.A. § 27A.711(3), without examining the percentage of the defendant's total sales made in Michigan:

"The question becomes whether the appellant maintained 'continuous and

systematic' contacts necessary to satisfy the doctrine of *International Shoe, supra,* and the applicable statute. [27A.711(3)]. The record and exhibits submitted show that in the year preceding this action, the appellant had dozens of sales in Michigan throughout the year, which altogether totalled over $30,000. Statements of appellant's counsel show the Michigan customers of the appellant to be among the large industries of Michigan. Upon perusal of the record, it is evident that the trial court did not err in ruling that the courts of Michigan properly have jurisdiction over the appellant." Júne v. Vikra Screw Feeders, 6 Mich.App. 484 at 491, 149 N.W. 2d 480 at 483.

Furthermore, most of the decisions that compare the foreign defendant's volume of activities within the forum state to its total volume of activities do not involve a cause of action arising out of the defendant's in-state activities. The present case, however, involves a contract, the proposal for which the defendant mailed into Michigan and which was accepted in Michigan by a Michigan resident with the cause of action arising out of an alleged breach of that contract.

The significance of the cause of action arising out of such a contract was emphasized by the United States Supreme Court in McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In *McGee,* the defendant, a foreign insurance corporation, sent an offer for mail order insurance to the plaintiff, a resident of the forum state. The plaintiff accepted the defendant's offer of insurance while in the forum state and mailed his premiums to the defendant from the forum state. That contract was the only contact the defendant had with the forum state. Nevertheless, the Supreme Court found the defendant to be amenable to the personal jurisdiction of the forum state's courts for a cause of action arising out of that insurance contract.

Here the plaintiff is a Michigan resident, the contract was accepted in Michigan after the defendant had mailed its proposals for the contract into Michigan, and the cause of action arises out of that contract. Under *McGee,* these facts alone might possibly be sufficient under due process to permit a Michigan court to render an *in personam* judgment against the defendant corporation in a suit arising out of that contract. In addition, such limited personal jurisdiction would also seem proper under M.S.A. § 27A.715(1), M.C.L.A. § 600.-715(1), which provides:

"The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

"(1) The transaction of any business within the State."

■■ But, as we have already discussed in great detail, the present defendant has had many other contacts with the State of Michigan over the past few years, including performing a significant volume of services within the state for its Michigan clients. On these facts, it is clear that the defendant has more than sufficient minimum contacts with the State of Michigan so that the maintenance of the present suit will not offend traditional notions of fair play and substantial justice. These facts also support the exercise of personal jurisdiction over the defendant corporation under M.S.A. § 27A.711(3)'s requirement that the defendant carry on "a continuous and systematic part of its general business within the State." For all of these reasons, defendant's motion to dismiss must be denied.

The defendant, Arthur D. Little, Inc., has also filed a motion for a change of

venue to the federal district court of Massachusetts, pursuant to Title 28 U.S.C. § 1404(a) (1948) which provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

It is clear that the present suit could have been commenced in a district court in Massachusetts, for that is where the defendant was incorporated and is doing business. Title 28 U.S.C. § 1391(c). It is not, however, clear that this action should be transferred to Massachusetts.

Section 1404(a) was not intended to destroy plaintiff's right to select the forum for his lawsuit; as the United States Supreme Court pointed out in Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955):

" * * * we believe that Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader."

Instead, a defendant is to be granted a change of venue under Section 1404(a) only when the balance of inconvenience strongly supports that change, for it is apparent:

" * * * [W]hether the order stands or is set aside, one of the litigants will be inconvenienced, and it became the duty of the district judge to balance inconveniences and to determine upon which litigant the greater hardship would rest, if he granted change of venue, and that determination was subject to the rule that unless the balance is strongly in favor of the defendant the plaintiff's choice of forum should rarely be disturbed." Nicol v.

Koscinski, 188 F.2d 537, (6th Cir. 1951)`.

The question is, therefore, whether the defendant has met its burden of proving that the inconvenience to the defendant of having to defend the present action in Michigan strongly outweighs the inconvenience that the plaintiff would sustain if the plaintiff were forced to proceed in Massachusetts. After examining the affidavits and answers to interrogatories filed by the parties, we do not believe that the defendant has met its burden.

The defendant contends that one factor requiring examination on a change of venue motion is the number of witnesses who will be inconvenienced by having to attend a trial in a particular location. The defendant then notes that seventeen of the witnesses it will produce at any trial reside in Massachusetts, while only four of the plaintiff's six witnesses reside in Michigan. Nevertheless, in determining whether witness inconvenience warrants a change of venue, a court should not be persuaded merely by the number of prospective witnesses residing in a particular location, but rather by the materiality of their anticipated testimony. We agree with Judge Kaufman's statement that:

"The district judges must be able to see through the voluminous affidavits presented and determine, as best possible, who are the key witnesses and what witnesses need be called, rather than merely count up the possible witnesses for each side." Judge Kaufman, Observations on Transfers Under Section 1404(a), 10 F.R.D. 595, 607–08.

See also, Thomson and McKinnon v. Minyard, 291 F.Supp. 573 (D.C.N.Y.1968); Quality Beverage Co. v. Sun-Drop Sales Corp. of America, 291 F.Supp. 92 (D.C. Wis.1968); Holiday Rambler Corp. v. American Motors Corp., 254 F.Supp. 137 (W.D.Mich.1966).

Although the defendant's answers to interrogatories describe generally the responsibilities of its Massa-

chusetts witnesses on the Algerian project, the defendant has failed to suggest what the anticipated testimony of those witnesses will be. Without that information, this court cannot properly determine who are the key witnesses in the present action. But even if that information had been supplied, it would still be impossible to decide who are the key witnesses in this suit and what anticipated testimony is material; for the defendant has not, to date, filed an answer to the complaint, thus preventing any formulation of the issues involved in this case. Without knowing these issues, a court cannot assess the materiality of various pieces of evidence. Under these circumstances, the fact that seventeen of the defendant's witnesses live in Massachusetts does not support a transfer to the United States District Court in Massachusetts.

■ The defendant, however, also alleges that it will be costly and disruptive of its business to defend the present action in Michigan. Nevertheless, the defendant, a corporation with sales in 1969 of over $45 million, has performed a substantial volume of services for customers within the State of Michigan during the past five years so the burden of now proceeding to defend a lawsuit in Michigan cannot be deemed too cumbersome. The plaintiff, on the other hand, is a small management consulting firm that has never performed any services in Massachusetts and has its offices in Detroit, Michigan. Hence, a transfer from a Michigan court to a Massachusetts court would merely shift the inconvenience of proceeding in this action from the defendant to the plaintiff.

■ The defendant further contends that a change of venue should be granted because the contract giving rise to the present action provides that it shall be governed by Massachusetts law. And, indeed, the fact that Massachusetts law rather than the law of Michigan may be applicable to this case is entitled to some weight in determining whether a transfer to the federal district court in Massachusetts is advisable; for a federal judge sitting in the state whose law is applicable should be better able to appraise the law of that state. Grubs v. Consolidated Freightways, Inc., 189 F.Supp. 404 (D.C.Mont.1960); Levin v. Mississippi River Corp., 289 F.Supp. 353 (D.C.N.Y.1968); Travelers Insurance Company v. Stuart, 226 F.Supp. 557 (D.C.Ark.1964). But unless it appears that complex questions of substantive law or of conflicts of law will arise, the fact that an alleged breach of contract will be governed by another state's law is not sufficient to warrant a transfer. Grubs v. Consolidated Freightways, Inc., *supra;* Scaramuzzo v. American Flyers Airline Corp., 260 F.Supp. 746 (D.C.N.Y.1966); Travelers Insurance Co. v. Stuart, *supra.* And just as it is impossible to assess the materiality of witnesses until the issues in this case have been formulated, it is also impossible at this stage of the proceedings to determine whether complex legal questions of foreign law are likely to arise. Moreover, as plaintiff has pointed out in its brief, the principles of contract construction are, to a great extent, the same across state lines. In addition, the Supreme Court of Massachusetts has itself commented:

> "Contracts should be construed in accordance with justice and common sense and the probable intention of the parties." Bowser v. Chalifour, 334 Mass. 348, 352, 135 N.E.2d 643, 645 (1956).

■ Finally, the defendant asks this court, in deciding whether to change venue, to consider the fact that all the materials the defendant has developed in relation to the Algerian project are in Massachusetts and that transporting this material to Michigan would impose a significant burden. On the other hand, the plaintiff, in an affidavit of its President, states that all the materials it has developed on the Algerian project are in Detroit, Michigan. Since the inconvenience appears to be equally divided between the parties on this point, plaintiff's choice of forum must prevail.

Hence, the court concludes that the defendant has failed to demonstrate sufficient inconvenience to override the plaintiff's choice of Michigan as its forum, when the plaintiff is a Michigan corporation, plaintiff's witnesses reside in Michigan, and the contract involved was accepted in Michigan. For this reason, defendant's motion for a change of venue to the United States District Court for Massachusetts must also be denied.

An appropriate order may be submitted.