**JETCO ELECTRONIC INDUSTRIES, Inc.**

v.

**Robert F. GARDINER, Individually and d/b/a Gardiner Electronics Co.**

**Thomas S. DOSS**

v.

**Robert F. GARDINER et al.**

**Civ. A. Nos. 70–H–441, 70–H–446.**

United States District Court,
S. D. Texas,
Houston Division.
April 2, 1971.

W. R. Malone, Huntsville, Tex., Donald Gunn, Houston, Tex., for plaintiffs.

Thomas H. Watkins, Baker, Watkins, Hayden & Ramsey, Austin, Tex., for defendants.

*Opinion and Order:*

SINGLETON, District Judge.

These consolidated diversity cases as styled and numbered above were brought for the recovery of damages and for injunctive relief. Defendants are alleged to have caused to be printed certain false and defamatory statements about a product manufactured and sold by plaintiff. Now pending is a motion to dismiss by defendants based upon lack of jurisdiction and failure by the complaint to state a claim upon which relief can be granted. Although there has been a question raised as to the minimum jurisdictional amount of 28 U.S.C. 1332, which will be discussed below, there is complete diversity between the opposing parties in this suit. *See* Strawbridge v. Curtiss, 3 Cranch 267, 2 L.Ed. 435 (1806).

The product, manufactured by both plaintiffs and defendants, at the heart of this dispute is a hand metal detector used by hobbyists to hunt for buried treasure and other metallic objects which might be of value. Defendants are said to have advertised in several magazines with coast-to-coast circulation and in these ads to have invited interested persons to write to defendants for a free catalog. This catalog which was sent to those who responded to the ad compares the Gardiner Models 190 and 200 to various products of other companies. One of these products is plaintiffs' Jetco-Treasure Hawk 990. The catalog represents to the public that a Jetco with a six-inch searchcoil will detect (1) a two square inch metal object to a depth of four-and-one-half inches and (2) a penny to a depth of two inches. The catalog further represents that a Jetco with a twelve-inch searchcoil will (1) also detect a two square inch metal object to a depth of four-and-one-half inches, but (2) that it is not capable of detecting a penny buried only one-half inch. Plaintiff contends that these statements are false in that a Jetco with a six-inch and twelve-inch searchcoil will detect a two square inch metal object to respective depths of six-and-one-eighth and ten-and-one-half inches and that a penny will similarly be detected to a depth of four inches irrespective of the searchcoil size. The defendants' motion to dismiss is based upon the proposition that these facts do not raise a cause of action, that jurisdiction is lacking because defendants are situated in Arizona and do no business in Texas, and that there is an insufficient allegation of jurisdictional amount.

I.

Defendants contend that their business contacts with Texas are so negligible that there is no jurisdiction to pursue the allegations of the complaint. In support of this, defendant Gardiner has submitted an affidavit saying that he has no salesmen in Texas and that, notwithstanding that two percent of his sales are made to Texans, all of these sales were consummated in Arizona. The affidavit further says that although defendants advertise nationally, no spe-

cial attempt has been made to reach the Texas market. A controverting affidavit by plaintiff Doss represents that at least seventy-five Texas residents have been deterred from purchasing Jetco detectors by the false statements made in defendants' catalog.

If defendants do business in Texas, they are amenable to process through the Texas Secretary of State. Art. 2031b, Vernon's Ann.Civ.St. Section 4 of that provision defines doing business in the following terms:

"For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation, joint stock company, association, partnership, or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State."

This long-arm statute as it is called will reach as far as due process will permit. And due process will permit when there are sufficient minimal contacts with the forum state. *See* Mitsubishi Shoji Kaisha Ltd. v. MS Galini, 323 F. Supp. 79 (S.D.Tex.1970). The minimal contacts requirement is satisfied when (1) the non-resident defendant or foreign corporation purposefully does some act or consummates some transaction in the forum state; (2) the cause of action arises from, or is connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state does not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. Sun-X International Co. v. Witt, 413 S.W.2d 761 (Tex.Civ.App.—Texark., 1967, n. r. e.). In Hearne v. Dow-Badische Chemical Co.,

224 F.Supp. 90 (S.D.Tex.1963), the following factors were said to be determinative of whether there are sufficient minimum contacts:

(1) The nature and the character of the business;

(2) The number and type of activities within the forum;

(3) Whether such activities give rise to the cause of action;

(4) Whether the forum state has some special interest in granting relief; and

(5) The relative convenience of the parties.

Here, the defendant has two substantial contacts with the forum state. First, if the advertisements were falsely made, they result in injury to the plaintiff's business in Texas. Secondly, two percent of the defendants' sales are to Texas residents.

The mail order nature of the defendants' business is such that defendants will sell a metal detector to anyone who wants to buy regardless of where that person is located. The injuries in this suit resulted because defendants purposefully advertised in a national magazine. Consequently, the contacts defendants have with the State of Texas are integrally related to plaintiffs' cause of action. Certainly, Texas has an interest in protecting her citizens from fraudulent interstate advertising. Presumably, many of the witnesses will be Texas citizens who, following the lure of defendants' advertisements, bought from defendants instead of plaintiffs.

An analogy may be drawn from the recent case of Coulter v. Sears, Roebuck and Co., 426 F.2d 1315 (5th Cir. 1970). There, plaintiff sued Sears when a television set exploded in plaintiff's Texas home. Sears subsequently joined Warwick Electronics whose only contacts with the State of Texas were the television sets manufactured by it, sold to Sears, and subsequently resold to retail customers in Texas. The court sustained jurisdiction holding that Warwick could reasonably anticipate that some of its products would be sold in Texas and that,

therefore, the entry of the sets into the stream of interstate commerce is sufficient to satisfy the minimal contacts requirements. Here, the defendant contends that he did not specifically intend to advertise in Texas. But the fact of the matter is that not only could he reasonably expect that his advertisements would be read by Texas citizens, but the very purpose of the advertisements was to entice potential customers, wherever they may be, not to do business with the plaintiff in Texas.

The defendant's reliance on Sun-X International Co. v. Witt, *supra,* is misplaced. There, the Court of Civil Appeals affirmed a trial court ruling that the long-arm statute did not reach a California defendant accused of breaching a distributorship agreement. The difference between that case and this one is that the plaintiff solicited defendant's acceptance of the agreement in California and then sued him in Texas. The defendant in this case, on the other hand, solicited business in Texas and is being sued in Texas. Thus, it must necessarily be concluded that Section 2031b subjects defendants to suit in Texas.

## II.

In absence of notice under Rule 44.1, Fed.R.Civ.P., that any of the parties intend to rely on foreign law, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) requires that the substantive law of the forum state be determinative of whether a cause of action has been stated. The question as to the sufficiency of the pleadings must, however, be tempered with the liberality of the federal rules. A motion to dismiss can be considered only in a light most favorable to the plaintiff, and all facts well pleaded must be admitted and accepted as true. John Walker & Sons v. Tampa Cigar Co., 197 F.2d 72, 73 (5th Cir. 1952). *See also* Goss v. Holiday Dinner Theaters, C.A. 69–H–297 (S.D.Tex.1969). Complaints are for the purpose of pleading facts, not law, and it is elementary that a complaint is not subject to dismissal unless it appears to a legal certainty that the plaintiff cannot possibly be entitled to relief under any set of facts which could be proved in support of its allegations. John Walker & Sons v. Tampa Cigar Co., *supra* 197 F.2d at 73.

The complaint characterizes plaintiffs' cause of action as one of "false disparagement." At common law, such a cause of action does exist in favor of one whose wares have been falsely maligned by a competitor in business. Smith-Victor Corp. v. Sylvania Electric Products, Inc., 242 F.Supp. 302 (N.D. Ill.1965); Annot., 57 A.L.R.2d 838–849. In some jurisdictions, it is known as a trade libel. Testing Systems, Inc. v. Magnaflux Corporation, 251 F.Supp. 286 (E.D.Pa.1966). Texas courts, however, do not recognize claims stated in these terms. Rather, all actions in Texas for libel are governed by statute. Article 5430 defines libel as follows:

> "A libel is a defamation expressed in printing or writing, or by signs and pictures, or drawings tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity, or virtue, or reputation of any one, or to publish the natural defects of any one and thereby expose such person to public hatred, ridicule, or financial injury. Acts 1901, p. 30."

The above definition is fully complete. No other may be considered in determining whether a particular publication is libelous or not. Deen v. Snyder, 57 S.W.2d 338 (Tex.Civ.App.—F.W., 1932, no writ hist.). Plaintiffs would appear to have alleged a cause of action under Article 5430. The publication, if false, tends to injure the reputation of Jetco and its owner by subjecting them to financial injury. *See* Bell Pub. Co. v. Garrett Engineering Co., 141 Tex. 51, 170 S.W.2d 197 (1943).

In Newspapers, Inc. v. Matthews, 161 Tex. 284, 339 S.W.2d 890 (1960), the

broad statement is made that "the very wording of the libel statute precludes its application to a business." (339 S.W.2d 893). On this proposition, the dissenting opinion agrees: " * * * there is no such legal wrong as libel of a business." (339 S.W.2d 894). If the term *business* as used in the opinion means trade, vocation, or profession, plaintiff would, of course, have no cause of action. If on the other hand the word *business* refers to a particular corporation, partnership, or proprietorship, plaintiff would not be so precluded. The opinion makes it clear that *business* is not being employed in its generic sense:

"It does not alter the situation that a corporation may be libeled, Bell Publishing Co. v. Garrett Engineering Co., 141 Tex. 51, 170 S.W.2d 197, Restatement of the Law of Torts, Vol. 3, Sec. 561, or that a partnership may be libeled. In both instances the defamation is of the owner of the business and not of the business itself. Libelous writings, by innuendo, may tend to injure the reputation of an owner and to expose him to public hatred. Such writings may also tend to injure the owner financially through a loss or reduction in business. *In each case, recovery of the two elements of damages will be for defamation of the owner, whether the owner be an individual, partnership or a corporation.*

"We hold as a matter of law that Matthews cannot recover for libel to his person in this instance for the reason that the articles refer to no person who could possibly be identified as the respondent." (339 S.W.2d 893— emp. added).

Here, in contrast to Newspapers, Inc. v. Matthews, *supra,* the catalog refers explicitly to plaintiffs' product, the Jetco Treasure Hawk 990. Bell Pub. Co. v. Garrett Engineering, *supra,* as well as Carter v. Bradshaw, 138 S.W.2d 187 (Tex.Civ.App.—Amarillo, 1940 no writ hist.) and De Mankowski v. Ship Channel Development Co., 300 S.W. 118 (Tex. Civ.App.—Gal., 1927, no writ, hist.) are thus in harmony with *Newspapers, Inc., supra.*

There is also an alternate theory of suit available to plaintiff. In Houston Chronicle Pub. Co. v. Martin, 5 S.W.2d 170 (Tex.Civ.App.—E.P., 1928, dism.), the court held that plaintiff, a rancher by trade, had an action for slander of property for a newspaper article which defendant had published and in which it had been said that plaintiff's cattle were afflicted with hoof-and-mouth disease. Thus, the effect of the article was to diminish the value of plaintiff's business which was held to be the measure of damages.

From the foregoing, it is apparent that plaintiff has a cause of action under the law of Texas. No opinion is expressed as to whether plaintiff also could proceed under the Lanham Act, § 43(a), 15 U.S.C. § 1125(a). *But see* Smith-Victor Corp. v. Sylvania Electric Products, Inc., *supra.*

### III.

 The complaint alleges that plaintiff was damaged in the amount of $30,000, but cites only one specific instance where a prospective customer was enticed to purchase defendants' product because of the statements made in the catalog about the quality of the Treasure Hawk 990. Defendants contend that the $30,000 should be disregarded and that the jurisdictional amount should be held insufficient. Defendants' reasoning is obviously based on the notion that special damages must be alleged and proven which plaintiff has failed to show in an amount exceeding $10,000. Of course, where items of special damages are claimed, they must be specifically stated.

 Article 5430 has been held to require proof only of general damages. Gibler v. Houston Post Co., 310 S.W.2d 377 (Tex.Civ.App.—Hou., 1958, n. r. e.), though the distinction between general and special damages is still very much pertinent to actions for slander of property. Houston Chronicle Pub. Co. v. Martin, *supra,* 5 S.W.2d p. 173. But

whether general or special damages are permissible, the jurisdictional amount in 28 U.S.C. § 1332 is sufficient if it appears that the amount claimed by plaintiff is done so in good faith. In this context, it will not be held that the amount alleged is not in good faith unless it is a legal certainty that plaintiff cannot recover the amount which he says he can. Jones v. Landry, 387 F.2d 102 (5th Cir. 1967). Judged by that standard, defendants' contentions on this point must fail.

In accordance with the foregoing, it is ordered that defendants' motion to dismiss be, and it is hereby, denied.