W. A. KRAFT CORP., (New Jersey) a corporation of the State of New Jersey, Plaintiff,

v.

TERRACE ON the PARK, INC., a corporation of the State of New York, Defendant.

Civ. A. No. 53–72.

United States District Court, D. New Jersey.

Feb. 1, 1972.

Crummy, O'Neill, Del Deo & Dolan, by John A. Ridley, Newark, N. J., for plaintiff.

Kirschenbaum & Shapiro, by Lewis Perkiss, New York City, for defendant.

## MEMORANDUM OPINION

LACEY, District Judge:

In this diversity action (28 U.S.C. § 1332) defendant, a New York corporation, challenges, on Due Process grounds, extraterritorial service of process upon it in New York under New Jersey's "long arm" rule [R. 4:4–4(c)(1)], as permitted by F.R.Civ.P. 4(d)(7).

Two questions are raised. First, how far has New Jersey itself gone in its application of its rule? Second, assuming service here is congruent with, or within, the parameters of the state's interpretation of that rule, does this service abridge constitutional guarantees? The

latter question is pressed upon us because the Due Process clause of the Fourteenth Amendment limits, albeit by blurred and indistinct lines, the power of state courts to enter *in personam* judgments against persons not served within the forum's boundaries.[1] Pulson v. American Rolling Mill Co., 170 F.2d 193, 194 (1 Cir. 1948).

The dual nature of the problem thus posed was stated by the New Jersey Supreme Court in a recent application of the state "long arm" rule, as follows [Avdel Corp. v. Mecure, 58 N.J. 264, 268, 277 A.2d 207, 209 (1971)]:

> Our long-arm rule, unlike statutes in some other states, permits service on nonresident defendants subject only to "due process of law." R. 4:4–4(e). In other words, we will allow out-of-state service to the uttermost limits permitted by the United States Constitution. . . .

Similarly, the Court of Appeals for this Circuit has stated [Bernardi Bros., Inc. v. Pride Mfg., Inc., 427 F.2d 297, 298 (3 Cir. 1970)]:

> . . . [The New Jersey rule] recognizes no limitations on extra-territorial service other than that imposed by the United States Constitution . . . Therefore, the question presented . . . is whether the United States Constitution would permit New Jersey or federal courts in New Jersey to exercise jurisdiction . . . . See Partin v. Michaels Art Bronze Co., 202 F.2d 541, 543 (3rd Cir. 1953).

■ The question presented, whether a constitutional guarantee has been abridged, is one of federal law and state authorities are not controlling. Scanapico v. Richmond, F. & P. R. Co., 439 F.2d 17, 19 (2 Cir. 1970); Partin v. Michaels

Art Bronze Co., 202 F.2d 541, 543 (3 Cir. 1953).

We are therefore to determine whether the defendant, neither licensed to do business, nor doing business here, nonetheless had the necessary "minimum contacts with . . . (New Jersey) such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' . ." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

In drawing upon settled legal principles to resolve the issue, it is of critical importance to recognize that this case does not involve whether there is a substantiality of contacts of a foreign corporation sufficient to support *in personam* jurisdiction in a suit on a claim unrelated to those contacts. Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). In such a case a foreign corporation's activities within the forum, it has been said, must be *"fairly extensive"* before the burden of defending a suit there may be imposed upon it without offending "traditional notions of fair play and substantial justice." Ratliff v. Cooper Laboratories, Inc., 444 F.2d 745, 748 (4 Cir. 1971), quoting F. James, Civil Procedure 640 (1965) (emphasis added by Court). Instead, we deal here with whether the contacts of this defendant justify jurisdiction *in personam* where the claim is based on a contract which, as will appear, had, both in its formulation and its fulfillment, New Jersey impact.

As both parties concede, the precise question thus shaped has not been fully and completely answered by the United States Supreme Court. Aside from general principles, *International Shoe* is of little aid, except as it suggested the dif-

---

1. *See* Foster, Long-Arm Jurisdiction in Federal Courts, 1969 Wis.L.Rev. 9, 38: Despite the rather obvious point that the fifth, rather than the fourteenth, amendment should be the source of due process limitation upon the exercise of federal court powers, it has generally been assumed that the incorporation of state law to confer district court amenability embraces state law as limited by federal restraints on the states themselves. . . .

ferent standards, qualitatively and quantitatively, to be applied, dependent upon whether the asserted claim was or was not "contact" connected. Closest to the point is McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223 (1957).

In *McGee* a non-resident insurance company mailed a reinsurance certificate to a California resident in California and offered to continue his insurance. The California resident accepted the offer and mailed his premium from California to the defendant in Texas. The Supreme Court held, upon those facts, that the insurance contract between the parties had "substantial connection" with California so as to render the insurance company (which had no other contact with California) subject to jurisdiction in that state.

The Supreme Court said (355 U.S. at 223, 78 S.Ct. at 201):

. . . It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State.

. . .

*McGee* noted that with increasing "nationalization of commerce," the tremendous growth "in the amount of business conducted by mail across state lines," and the frequency with which "commercial transactions touch two or more States," there had developed "a trend . . . clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other non-residents." (355 U.S. at 223, 78 S.Ct. at 201).[2]

On the other hand, shortly after McGee, the United States Supreme Court warned [Hanson v. Denckla, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958)]:

. . . [I]t is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the "minimal contacts" with that State that are a prerequisite to its exercise of power over him.

See Vanderbilt v. Vanderbilt, 354 U.S. 416, 418, 77 S.Ct. 1360, 1362, 1 L.Ed. 2d 1456.

■ Against this background we examine the essential facts in the case at bar, mindful that it is the plaintiff who shoulders the burden of proof by a preponderance of the evidence. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).[3]

The transaction in suit had its genesis on March 3, 1970, when defendant by letter from its agent Monroe, in New York, solicited from plaintiff, at its New Jersey office, a bid on specifications

2. O'Hare Internat'l. Bank v. Hampton, 437 F.2d 1173, 1177 (7 Cir. 1971): "The test of whether business was transacted within the state must be applied in the context, not of communication and transportation criteria of yesteryears, but of modern day commercial and personal accelerated relationships. The long arm statutes are comrades of the computer."

3. O'Hare Internat'l. Bank v. Hampton, supra at 1176: ". . . When considering a challenge to its jurisdiction, a court may receive and weigh affidavits. 5 Wright and Miller, Federal Practice and Procedure . . . 565 (1969) . . . The burden of proof rests upon the party asserting existence of jurisdiction . . . ; KVOS, Inc. v. Associated Press, 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183 (1936). However, this burden is met by a prima facie showing that jurisdiction is conferred by the long arm statute. United States v. Montreal Trust Co., 358 F.2d 239 (2nd Cir. 1966)." The *O'Hare* Court concluded (437 F.2d at 1177, n. 2,) "that the plaintiff has prima facie established in personam jurisdiction under the long arm statute does not relieve it from jurisdictional facts at trial. United States v. Montreal Trust Co., 358 F.2d 239, 242, n. 4 (2nd Cir. 1966)."

"for the standby diesel generating plant required for this project." The letter stated that the defendant would issue the Purchase Order to "the successful installing contractor . . . ." A purchase order did thereafter issue, from defendant to plaintiff, in April, 1970, in New York. It was for two generators, to be installed in New York. This purchase order was never fulfilled because defendant cancelled its order after plaintiff had apparently incurred certain expense. The controversy between the parties led to correspondence, conferences (at least one of which took place in New Jersey), telephone calls, and finally litigation, with plaintiff commencing suit against the defendant in this Court (Civ. 1364–70). Defendant never answered; instead, during the time extended by stipulation therefor, its legal representatives had numerous conferences with plaintiff's, culminating apparently happily, in dismissal of the lawsuit, and in the transaction which is the subject of this suit, specifically, what is in form a secured transaction, but which, in its underlying essence, saw a sale and delivery of one generator for $70,000 by plaintiff to defendant in New York, on which $50,000 is still due and owing. Because defendant has concededly refused to pay said $50,000, plaintiff now seeks to repossess the generator by virtue of defendant's alleged default, as provided in the Equipment Sale Contract and Security Agreement of March 5, 1971 (Ex. A to Verified Complaint). In its papers on this motion defendant denies default and claims plaintiff has failed to make available to it various items, including wiring diagrams, needed to make the generator operative. The "closing" conference at which documents were executed and exchanged, and $20,000 was paid by defendant to plaintiff, took place in the New York City office of defendant's counsel.

The activity of the defendant, in its impact upon—and connection with— New Jersey, goes back as far as March, 1970. Everything thereafter is to be regarded as background for the transaction in suit. In this light, the events place this case clearly within the *McGee* rationale. Burton Shipyard, Inc. v. Williams, 448 F.2d 640 (9 Cir. 1971).

It was the defendant that initiated the relationship between the parties. It is chargeable with knowing that its order would cause activity in New Jersey. The contract in suit, while signed in New York, had substantial connection with New Jersey.

Under all the circumstances we hold that it does not offend traditional notions of fair play and substantial justice to hold that *in personam* jurisdiction has been obtained, within due process limits, over the defendant. *Cf.* McQuay, Inc. v. Schlosberg, Inc., 321 F. Supp. 902 (D.Minn.1971); *but see* Aftanase v. Economy Baler Co., 343 F.2d 187, 189–190 (8 Cir. 1965) (opinion by Mr. Justice Blackmun, then Circuit Judge) and Blum v. Kawaguchi, Ltd., 331 F.Supp. 216 (D.Neb.1971).

We note too that the transaction in suit, as we have thus delineated it, is not unlike that in Avdel Corp. v. Mecure, *supra,* a holding which, while not controlling upon this Court on the due process issue, is grounded upon reasoning which we find consonant with the contemporary commercial scene, and hence persuasive.

Finally, where federal jurisdiction is based upon diversity of citizenship, we must determine whether personal jurisdiction is properly asserted under New Jersey law. Arrowsmith v. United Press Intern'l, 320 F.2d 219 (2 Cir. 1963). In view of the language of the New Jersey rule under which service here was accomplished, as interpreted by *Avdel, supra,* it is clear that it is.

Accordingly, the motion to dismiss the Complaint upon the ground that this Court lacks jurisdiction over the defendant is denied.

Submit an appropriate order.