William **REILLY**, Plaintiff,

v.

**P. J. WOLFF & SOHNE**, Defendant.

**Civ. A. No. 1076–73.**

United States District Court,
D. New Jersey.

April 5, 1974.

Zarin & Maran by Joseph Maran, Jr., Newark, N. J., for plaintiff.

Lowenstein, Sandler, Brochin & Kohl, by Murry D. Brochin, Newark, N. J., for defendant.

## OPINION

STERN, District Judge.

This is a diversity action wherein plaintiff, a New Jersey resident, sues a West German corporation. Plaintiff, a former employee of the Davey Corporation of Jersey City, New Jersey, allegedly mangled while working near a machine called a "press table", sues the German corporation which, allegedly, negligently designed and manufactured the "press table" in Germany, and thereafter shipped the defective machine from its plant in Germany to Jersey City, with the knowledge that it would there be operated at the Davey Corporation facility.

Pursuant to Rule 4(e) of the Federal Rules of Civil Procedure, service was effected by the use of New Jersey Rule 4:4–4(c)(1),[1] the New Jersey "long arm" statute, which permits service by registered or certified mail.

The defendant makes substantial objection to the service herein. It claims that Rule 4:4–4(c)(1) does not allow, and indeed the due process clause of the United States Constitution prohibits jurisdiction, as here, where the defendant is a corporation which maintains no facilities, agents, or property within this State, has never done business *within* this State, and whose sole State contacts are three contracts which, it claims, it made in Germany and thereafter fully performed upon in Germany. These claims will be more fully examined herein.

Rule 4(e) of the Federal Rules of Civil Procedure permits service of process and the obtaining of "in personam" jurisdiction in any manner permitted by state rule or statute, and it is well settled that a United States Court, deciding the validity of that service, must test validity first by determining whether the state courts would hold it valid under state law, and, if they would, whether as a matter of federal law the scope of permissible service under state law is within the parameters of fundamental fairness as defined by the due process clause of the United States Constitution. Partin v. Michaels Art Bronze Co., 202 F.2d 541, 542 (3rd Cir. 1953); Pulson v. American Rolling Mill Co., 170 F.2d 193, 194 (1st Cir. 1948); Keckler v. Brookwood Country Club, 248 F.Supp. 645, 646 (N.D.Ill.1965); and Elkhart Engineering Corp. v. Dornier Werke, 343 F.2d 861, 863 (5th Cir. 1965). For the converse see: Benjamin v. Western Boat Building Corp., 472 F.2d 723, 725 (5th Cir. 1973).

As a practical matter, in New Jersey, the test is the same. Both the New Jersey rule and the Supreme Court of New Jersey proclaim that New Jersey

---

1. Rule 4:4–4. Summons; Personal Service; In Personam Jurisdiction.

Service of summons, writs and complaints shall be made as follows: . . .

(c) Corporations, Partnerships, and Associations

(1) Corporations. Upon a domestic or foreign corporation, by serving, in the manner prescribed in paragraph (a), either an officer, director, trustee, or managing or general agent; or any person authorized by appointment or by law to receive service of process on behalf of the corporation; or the person at the registered office of the corporation in charge thereof. If service cannot be made upon any of the foregoing, then it may be made upon the person at the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then upon any servant of the corporation within this State acting in the discharge of his duties. If it appears by affidavit of plaintiff's attorney or of any person having knowledge of the facts that after diligent inquiry and effort personal service cannot be made upon any of the foregoing and if the corporation is a foreign corporation, then, consistent with due process of law, service may be made by mailing, by registered or certified mail, return receipt requested, a copy of the summons and complaint to a registered agent for service, or to its principal place of business, or to its registered office.

intends the outer limit of its "long arm" process to be the outer permissible limit of the due process clause itself. Avdel Corp. v. Mecure, 58 N.J. 264, 268, 277 A.2d 207, 209 (1971). *Cf.*, Japan Gas Lighter Association v. Ronson Corp., 257 F.Supp. 219, 231 (D.N.J.1966).[2]

The issue to decide, then, is whether under the circumstances of this case this defendant may be required to defend this suit in New Jersey, consistent with the application of the concepts of fundamental fairness, reasonableness and justice mandated by the United States Constitution. Bernardi Bros., Inc. v. Pride Manufacturing, Inc., 427 F.2d 297, 298 (3rd Cir. 1970); W. A. Kraft Corp. v. Terrace On the Park, Inc., 337 F.Supp. 206, 207 (D.N.J.1972); In-Flight Devices Corp. v. Van Dusen Air, Inc., 466 F.2d 220, 225 (6th Cir. 1972); Ratliff v. Cooper Laboratories, Inc., 444 F.2d 745, 747 (4th Cir. 1971).

Viewing the history of "in personam" jurisdiction, a trend is clearly discernible towards expanding the permissible scope of state jurisdiction. The Supreme Court has outlined the parameter of "in personam" jurisdiction as limited by due process in two major decisions: International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

"Historically the jurisdiction of courts to render judgment *in personam* is grounded on their defacto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565. But now that the *capias ad respondendeum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278. See Holmes, J., in McDonald v. Mabee, 243 U.S. 90, 91, 37 S.Ct. 343, 61 L.Ed. 608. Compare Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316, 319, 63 S.Ct. 602, 604, 606, 87 L.Ed. 1722. See Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375; Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091; Young v. Masci, 289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158."

International Shoe Co. v. Washington, *supra,* at 316, 78 S.Ct. at 157.

■ Under this test it is not necessary that a corporation be actually *present* in the forum state, through offices or agents, at the time suit is commenced. It suffices if the corporation has enough regular business contact with the forum state so that it cannot be deemed unfair to require it to be accountable to that forum's courts as a matter of course.

■ The Supreme Court has recognized that the presence of a corporation for the determination of satisfaction of due process demands, which would justify the subjection of a corporation to suit in a state for all purposes, cannot be catalogued by a mechanical or quantitative test. The analysis of the extent of the activities of a corporation must establish sufficient contacts or ties with the state of the forum to permit a finding that the corporation has availed itself of the benefits and protection of the laws of that state, whether or not it maintains a permanent office there. If this test is met, then under our traditional concepts of fair play and substantial justice, it may be sued in that forum, for

---

2. For the same results under Michigan law, see McGraw v. Matthaei, 340 F.Supp. 162 (E.D.Mich.1972); under Texas law see Jetco Electronic Industries, Inc. v. Gardiner, 325 F.Supp. 80 (S.D.Texas 1971); and under Tennessee law, see Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374 (6th Cir. 1968).

all purposes, to the full extent that it may be sued in the state of its incorporation or the state of its principal place of business. Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

A third type of situation arises when an attempt is made to sue a corporation which is neither *actually* then present in the forum state (Pennoyer v. Neff, *supra*), nor *deemed* to be present because of repeated contacts with the forum (International Shoe Co. v. Washington, *supra*), but where, instead, the suit *is itself predicated* on an alleged wrong done to the plaintiff *within* the forum state arising out of a single or isolated act done by the defendant *within* the forum. This is precisely the case of McGee v. International Life Insurance Co., *supra*.

In *McGee*, a non-resident insurance company mailed a reinsurance certificate to petitioner's son, a California resident, and offered to continue his insurance. The California resident accepted the offer and paid the premiums by mail from his California home to the respondent in Texas. Petitioner, beneficiary and mother of the insured, thereafter sent proofs of her son's death to the respondent, but the insurance company refused to pay the claim. A unanimous Supreme Court held, upon these facts, that the suit in California to collect the insurance proceeds was "based on a contract which had substantial connection with that state." Although the insurance company was not actually then present in California, and had no contacts with California other than this one contract, the Supreme Court held that due process was not offended by making the insurance company amenable to California "in personam" jurisdiction, and requiring it either to appear in the forum state or default. *McGee, supra*, 355 U.S. at 224, 78 S.Ct. at 201.

McGee noted that "a fundamental transformation of our national economy over the years" has been a dominant cause in the necessity of expanding the scope of state jurisdiction over foreign corporations and other non-residents. Many current commercial transactions "touch two or more states and may involve parties separated by the full continent." At the same time modern advances in transportation and communication have alleviated the burden for a party sued to defend himself in a jurisdiction where he engages in economic activity. (355 U.S. 220 at 222, 78 S.Ct. 199 at 201, 2 L.Ed.2d 223).

*McGee* has not extinguished all restrictions on the personal jurisdiction of state courts. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), decided shortly after *McGee*, reaffirmed that the requisite "minimal contacts" enunciated in International Shoe Co. v. Washington, *supra*, must be present before a defendant may be called to defend in a foreign tribunal. The Supreme Court, however, was explicit in distinguishing *Hanson* from *McGee*:

> "The cause of action in this case is not one that arises out of an act or transaction consummated in the forum state. In that respect, it differs from McGee v. International Life Insurance Co. . . . In contrast to [McGee,] this action involves the validity of an agreement that was entered *without any connection with the forum State*."

(357 U.S. at 251–252, 78 S.Ct. at 1239) (Emphasis added).

It thus appears that there is nothing improper, or unfair, much less unjust or violative of due process, in requiring a corporation which has, *although only once,* either actually by agent or constructively by mail, come into the jurisdiction to do an act of business therein, to return to the jurisdiction to defend itself when it is there charged with a wrong directly arising out of that specific act of business done by it within the forum state. W. A. Kraft v. Terrace On the Park, Inc., *supra*;[3] Duple Motor

---

3. As my Brother Judge Lacey therein wrote, at page 207 of 337 F.Supp.:

> " . . . it is of critical importance to recognize that this case does not involve

Bodies Ltd. v. Hollingsworth, 417 F.2d 231, 235 (9th Cir. 1968); Elkhart Engineering Corp. v. Dornier Werke, *supra*, 343 F.2d at 863. *Cf.*, Eyerly Aircraft Co. v. Killian, 414 F.2d 591, 595 (5th Cir. 1969).

■ Upon the tenets of these cases, we must examine the essential facts in the case at bar.

The defendant claims that it furnished a total of four machines (one of which allegedly injured the plaintiff and is the basis of this suit) to the Davey Company; one pursuant to a contract in 1965, two pursuant to a contract in 1969, and one pursuant to a contract of 1973.

The defendant claims that all of these contracts were negotiated in Germany and consummated in Germany, and, by their own explicit terms, disputes between the parties were to be resolved by arbitrators designated pursuant and under the Rules of Conciliation and Arbitration of the International Chamber of Commerce and not the law of Germany or New Jersey. In sum, the defendant claims that these contracts were negotiated and consummated between Davey and itself *entirely* in Germany, fully performed by it within Germany when it put the machine on a ship in a German port, and, finally, in designating a forum for resolution of disputes other than New Jersey, defendant, itself, was denied protection of New Jersey laws and that "this denial, coupled with the absence of *any activities* by P. J. Wolff *within* New Jersey, furnished conclusive evidence that defendant's products only entered New Jersey as an incident of business conducted exclusively in Germany." [4]

This Court finds that the facts are somewhat otherwise. These contracts were not negotiated entirely in Germany. From documents submitted by P. J. Wolff, particularly Exhibits V, VII and XIVb (letters of March 2, 1966; March 16, 1966; and January 9, 1969), we find, using traditional concepts of offer and acceptance, that these contracts were executed by use of mailings between New Jersey and Germany. By means of the same exhibits, we find these contracts were not fully negotiated and consummated in Germany, but were both negotiated and consummated by the transmittal of letters, of documents and of funds *between* New Jersey and Germany, and Germany and New Jersey.

We do not find, therefore, that the manufacture and sale of these four machines was a business conducted by the defendant entirely and solely in Germany.

The Court notes, for example, that Manfred Wolff Müller, a managing director of defendant, in an affidavit addressed to this Court, states that this company manufactures various types of machinery for sale, and for this latter

whether there is a substantiality of contacts of a foreign corporation sufficient to support *in personam* jurisdiction in a suit on a claim unrelated to those contacts. Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). In such a case a foreign corporation's activities within the forum, it has been said, must be 'fairly extensive' before the burden of defending a suit there may be imposed upon it without offending 'traditional notions of fair play and substantial justice.' Ratliff v. Cooper Laboratories, Inc., 444 F.2d 745, 748 (4th Cir. 1971), quoting F. James, Civil Procedure 640 (1965) (emphasis added by Court). Instead, we deal here with whether the contacts of this defendant justify jurisdiction in personam where the claim is based on a contract which . . . had . . . New Jersey impact." W. A. Kraft v. Terrace On the Park, Inc., *supra*, at 207.

4. " . . . First, the agreements themselves were consummated and performed in Germany. It was in Germany that the contracts became effective when Davey's offer was accepted by P. J. Wolff, and it was in Germany that the entire contract was performed. This performance was completed, and title to the machines passed to Davey, when they were shipped F.O.B. Hamburg. In other words, defendant never conducted any activities in New Jersey in relation to these or any other contracts."
(Page 6 of Defendant's Brief)

purpose maintains sales representatives "acting in different countries." (See page 3 of P. J. Wolff & Sohn's affidavit)

We find no difference between sales made from the defendant to various companies in various countries *through* sales agents in those countries, and the sales here of four machines, totaling several hundred thousands of dollars, made by defendant dealing *directly* by mail with its American purchaser in New Jersey.[5] In both cases the defendant is not operating exclusively in Germany but internationally, and the mere fact that its contract specified that disputes between contracting parties are to be resolved by a forum other than those native to either does not mean that injured third parties are bound thereby.

Indeed, had there been no such clause in their contacts, that is, the contracts between Davey and Wolff, and had Davey Company defaulted on its obligation to pay for that machinery manufactured by the defendant in Germany, there can be no doubt that this defendant could have sued Davey in the courts of this state. By the same token, without such a clause in their contract, Davey could have sued the defendant here for any breach of its duty. McGee v. International Life Insurance Company, *supra*, 355 U.S. at 223, 78 S.Ct. 199; W. A. Kraft Corp. v. Terrace On the Park, Inc., *supra*, 337 F.Supp. at 207; Doyn Aircraft, Inc. v. Wylie, 443 F.2d 579, 582 (10th Cir. 1971).

That is not to say that the mere sale of four machines in New Jersey, over a six-year period, in and of itself makes this defendant liable to suit here by any plaintiff for any cause. More than this is required to hold that they are exposed to suit in New Jersey in the same manner as a New Jersey corporation would be liable for suit here; that is, for all purposes. International Shoe Co. v. Washington, *supra*; Deloro Smelting and Refining Co. v. Engelhard Minerals & Chemicals Corp., 313 F.Supp. 470, 475 (D.N.J.1970).

This suit, however, is premised not on the fact that Wolff is in general business, or even on any quantitative analysis of its business here. This is a suit based strictly on, and arising out of the manner in which Wolff conducted a specific act of business here; that is, the alleged negligent default of its contract to deliver a proper machine to, for the use of, and, more particularly, for use within a New Jersey establishment.

Thus, the question here is not whether Wolff is generally liable for suit in New Jersey because it did that quantum of business which would bring it under the protection and, consequently, under the aegis of New Jersey law. (International Shoe Co. v. Washington, *supra*.) The question here is whether, having sent a specific machine here, Wolff may be held liable for claims for relief filed here, when those claims arise from the alleged negligent manufacture of that specific machine. Duple Motor Bodies, Ltd. v. Hollingsworth, *supra*, 417 F.2d at 235.

The New Jersey courts, on similar factual grounds, have held that foreign corporations can be thus served and sued in state courts here. Certisimo v. Heidelberg, 122 N.J.Super. 1, 298 A.2d 298 (Law Div.1972), aff'd. sub nom. Van Eeuwen v. Heidelberg Eastern, Inc., 124 N.J.Super. 251, 306 A.2d 79 (App.Div. 1973).[6]

---

5. Indeed, this is exactly the *McGee* case. The Life Insurance company had never entered the forum state, but used the mails to consummate the contract.

6. This theory has been labeled the "stream of commerce" rule in New Jersey. Van Eeuwen v. Heidelberg Eastern, Inc., 124 N.J.Super. 251, 256, 306 A.2d 79, 81 (App. Div.1973); and Reilly v. Phil Tolkan Pontiac, Inc., 372 F.Supp. 1205, 95 N.J.L.J. 105 (D.N.J.1974).
Other jurisdictions have implemented this theory:
A Swedish manufacturer 'indirectly' sold a crane to a Pennsylvania concern and the product allegedly caused injuries in Pennsylvania due to the negligent manufacturing of the defendant. Extension of jurisdiction over Swedish manufacturer did not violate

There, a German corporation, HDAG, with absolutely no plant, personnel or property within the United States, manufactured a printing press. HDAG in turn sold its press, in Germany, to an American distributor, which in turn resold it to a New Jersey corporation whereat it caused, allegedly by its negligent construction, an injury to a plaintiff in New Jersey. Upon these facts the New Jersey courts held that HDAG could be served under New Jersey "long arm" statutes, because the defendant could anticipate that its presses would cause injury if negligently made and intended its machines to be sold in the United States, although it had no knowledge that it would be resold in any particular state of these United States.

The defendant here does not stand even as well as HDAG. Its direct activity was not confined to Germany as was HDAG's, but embraced direct communication with Davey Company in New Jersey. Wolff, unlike HDAG, knew the firm which would employ its machinery, and sent its presses into New Jersey with the exact intention that they should here be operated by persons employed in this State.

Wolff suggests that it is nevertheless fundamentally unfair that it should be forced to come to New Jersey to defend itself on the charge that a machine designed by it and manufactured by it for the specific use of a New Jersey firm, was negligently designed and negligently manufactured, thereby injuring a New Jersey worker and resident.

This Court, however, finds, that the design, manufacture and shipment of this machine were all acts by this defendant which were calculated to have an effect in New Jersey. It is simply inconceivable, to this Court, that Wolff did not foresee that these machines could injure workmen in New Jersey if they were defectively designed or negligently manufactured in Germany.

This defendant knew that these four costly machines would be operated in a New Jersey plant, probably by New Jersey workmen, and that such equipment, if defective, could cause severe injury to those workmen. In spite of these considerations, Wolff states, "It would be grossly unfair for this court to require this German corporate defendant to cross the Atlantic to defend itself." (Page 18 of Defendant's Brief) It is suggested, instead, that this injured workman should journey and commence suit there. There is no other alternative; if his claim is against Wolff, as he says it is, either he may sue here, or he must sue there.

The machine, defective or not, is not in Germany, it is here. The witnesses to the accident, if any, were witnesses here. The injuries were sustained here. They were treated here and medical bills, if any, were paid here. Even the crucial witnesses for Wolff's defenses of contributory negligence and independent intervening force will be found in New

due process. Benn v. Linden Crane Co., 326 F.Supp. 995 (E.D.Pa.1971).

A Japanese manufacturer held subject to jurisdiction in Nebraska after it indirectly shipped its product, which was allegedly negligently manufactured, into the forum state. Blum v. Kawaguchi, Ltd., 331 F.Supp. 216 (D.C.Neb.1971).

Indirect shipment of a firearm, which allegedly injured the plaintiff in Pennsylvania because of its negligent manufacture, by a California corporation which imported the product, was sufficient contact with the forum state to allow in personam jurisdiction under the Pennsylvania "long arm" statute. Smiley v. Gemini Investment Corporation, 333 F.Supp. 1047 (W.D.Pa.1971).

See also: Scafati v. Bayerische Motoren Werke AG, 53 F.R.D. 256 (W.D.Pa.1971); Scott v. Crescent Tool Co., Div. of Crescent Niagara Corp., 296 F.Supp. 147 (N.D.Ga. 1969); Gardner v. Q.H.S., Inc., 304 F.Supp. 1247 (D.S.C.1969); Cf., Coulter v. Sears, Roebuck & Co., 426 F.2d 1315 (5th Cir. 1970); and Eyerly Aircraft Co. v. Killian, *supra.*

For various views on the recent expansion of state jurisdiction based on long arm statutes, see: Foster, Judicial Economy; Fairness and Convenience of Place of Trial: Long Arm Jurisdiction, 47 F.R.D. 73 (1968), and Jurisdiction—Non-Residents—Torts, 24 A.L.R.3d 532, and the cases cited therein.

Jersey, not in Germany. Realistically, the plaintiff sues here, or not at all.[7]

New Jersey, which has decreed that her "long arm" statute shall reach to the full length permitted by the federal due process clause, has made it clear that it considers service in this kind of case to be within permissible constitutional limits. Certisimo v. Heidelberg, *supra,* and authorities cited therein.

This Court, as a matter of federal law, finds nothing that smacks of fundamental unfairness, unreasonableness or injustice in that determination by New Jersey.[8]

The Ninth Circuit has adopted a similar approach to a case almost factually identical to the one *sub judice.* In Duple Motor Bodies, Ltd. v. Hollingsworth, *supra,* an English manufacturer of motor coach bodies was sued for injuries suffered in Hawaii allegedly due to the negligent manufacture and negligent operation of a tour bus. Appellant, Duple Motor Bodies, Ltd., collaborated with General Motors Corp. and Vauxhall Motors, another English corporation, either in the manufacture or distribution of the bus to Haleakala Motors, a dealer, which sold the bus to Main Island Tours, operator and owner of the vehicle at the time of the accident. Duple Motor Bodies, Ltd. designed and manufactured the coach bodies and shipped them to Vauxhall for installation in the final product.

As in the instant case,

"The [products] were designed and manufactured by [defendants] with the knowledge that they were to be used in Hawaii and were made with special modifications to adapt them for use there . . ."[9]

"Our case is not one where the alleged negligent conduct was committed within the forum state and where the physical presence of the defendant in commission of the conduct constituting the alleged negligence was itself a significant contact. Specifically we deal with the problem of products liability in the context of foreign trade.

. . . the facts establishing jurisdiction under the [Hawaii] statute . . . also establish liability and, where disputed, cannot suffice as contacts with the forum state. What is needed is some additional factor that would render it fair to require the manufacturer to submit these disputed issues to a foreign forum.

In our judgment, the presence of [appellant's] coach bodies in Hawaii, brought about by [appellant's] sales to Vauxhall *with knowledge that the product was destined for Hawaii, was sufficient contact with Hawaii to meet the requirements of due process.*"

(417 F.2d at 235) (Emphasis added)

The Ninth Circuit concluded that it did not find it offensive to fair play or substantial justice or an undue burden on foreign trade to require a manufacturer to defend his product wherever he has placed it.[10]

---

7. McGee v. International Life Insurance Company, *supra.*

8. "As former Judge Byrne wrote in *Certisimo, supra* [122 N.J.Super.] at 14 [298 A. 2d at 305], '[The defendants] can foresee that their product may cause injury if defectively designed or manufactured. If [the defendant] wishes to benefit from American markets, therefore, it is not unreasonable or fundamentally unfair for them to be required to submit to the jurisdiction of a state whose resident has allegedly been injured by its product.' "

For an analysis of competing jurisdictional policies and their relation to reason and fairness see: Van Mehren and Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.R. 1121, 1164 (1966).

9. The court also identified other contacts with the forum state: the purchaser's visit to appellant's factory in England and his meetings there with appellant's representatives; and, following the sale, appellant responded to an order for spare parts and at that time solicited further business from the Hawaiian purchaser.

10. In Aftanase v. Economy Baler Company, 343 F.2d 187 (8th Cir. 1965) (Opinion by Mr. Justice Blackmun, then Circuit Judge), a foreign manufacturer was held amenable

Defendants argue dismissal on the basis of Scheidt v. Young, 389 F.2d 58 (3rd Cir. 1968), and Deloro Smelting and Refining Co. v. Engelhard Minerals & Chemical Corp., *supra*. Both cases are inapposite.

In *Scheidt*, the New Jersey plaintiff sued the owners of a Pennsylvania resort in the United States District Court in New Jersey, alleging that the injury which she incurred in a softball game at the resort in Pennsylvania was the result of a negligent act of the defendants in Pennsylvania. "Extra territorial service of process [was effected pursuant to] Rule 4(e) of the Federal Rules of Civil Procedure . . . in the manner prescribed in the statute or rule [of the state in which the district court sits]." [11] (389 F.2d 59) To sustain the service, the plaintiffs relied upon: (1) defendant's advertisements in a New York newspaper, which was also circulated in New Jersey; (2) a telephone call initiated by the plaintiff to the defendant in Pennsylvania; (3) defendant's receipt of a deposit sent from New Jersey; and (4) a visit to New Jersey by defendant's representatives regarding the accident.

In *Scheidt*, the defendant had some minimum contact with the forum state, but this contact was not sufficient to make it amenable to suit here for *all* purposes on the one hand, and, on the other, the suit in question was not predicated on the one forum contact, but on a totally different act, an act of negligence which occurred, if at all, not in New Jersey but in Pennsylvania, and injured the plaintiff, not in New Jersey but in Pennsylvania.

Thus, the Third Circuit, in a *per curiam* opinion, affirmed the district court's judgment quashing service of process for the reason that defendant's activities did not constitute the "minimum contacts" necessary to sustain jurisdiction, as required by due process under the standards of Hanson v. Denckla, *supra*, 357 U.S. at 253, 78 S.Ct. 1228; Scheidt v. Young, *supra*.

*Deloro* was based on an action against the ultimate purchaser of cobalt by the bailee to recover for conversion. Englehard, the ultimate purchaser, filed a third-party complaint against its seller, Klaff. Engelhard conceded "that the corporate contacts upon which it relie[d] to subject Klaff to jurisdiction . . . under Rule 4(e) [were] *unrelated* to the cause of action. (This concession [was] necessitated by the undisputed facts that both the complaints of Deloro and Engelhard relate to an alleged theft in Ontario, Canada, and a subsequent resale in Baltimore.)" (313 F.Supp. at 475) There was, in *Deloro*, therefore, neither the minimum number of contacts necessary for the test under *International Shoe*, nor a suit *based* on even one contact, under *McGee*. There were no contacts at all.

Thus, both *Scheidt* and *Deloro* cited by the defendant here, while inapposite to the present controversy, do illustrate the distinction between "in personam" jurisdiction based upon "minimal con-

---

to suit for injuries allegedly caused by negligent design of its product. Although the manufacturer solicited only through independent salesmen, shipped its products F.O.B. from its principal place of business to the forum state, and had no office, warehouse, or employee in the forum state, subjection to jurisdiction was found consistent with fair play and substantial justice.

Similarly, in Kroger Company v. Dornbos, 408 F.2d 813 (6th Cir. 1969), a foreign partnership which allegedly negligently processed and shipped fish containing potentially toxic substances with the result that the customers of the retailer suffered injury in the forum state, and the motor carrier which transported the fish from the processor to another carrier without entering the forum state were subject to the forum state's long arm statute. The court determined that "the legislature intended to give to [the forum state's] citizens the benefit of the full jurisdiction allowable consistent with the due process clause." Personal jurisdiction, based upon the minimum contacts (any tortious act within the state) with the forum state, was found consistent with due process requirements.

11. Rule 4:4–4(a), (e) and (h) of New Jersey Civil Practice Rules.

tacts", in International Shoe Co. v. Washington, *supra*, and "in personam" jurisdiction based upon a transaction related to the cause of action, McGee v. International Life Insurance Co., *supra*.

Under the *McGee* test, we find that it is fundamentally fair for the Wolff Company, having chosen to benefit from its market here, to answer here to the complaint made that the product which it designed and shipped was defectively designed and manufactured to the injury of a workman here.

Accordingly, the motion by defendant Wolff to quash service and to dismiss for lack of "in personam" jurisdiction is hereby denied.