CAL–MAR INDUSTRIES, INC., a Florida Corporation, and Gina Sena, Individually and as an employee of Cal-Mar Industries, Inc., Plaintiff,

v.

WILSON RESEARCH CORPORATION, a Pennsylvania Corporation, Defendant.

No. 77–1458–Civ–JLK.

United States District Court, S. D. Florida.

Dec. 14, 1977.

Theodore R. Dempster, North Miami Beach, Fla., for plaintiff.

R. A. King, Pittsburg, Pa., James D. Adams, Miami, Fla., for defendant.

## ORDER

JAMES LAWRENCE KING, District Judge.

This cause came on for consideration upon the motion of defendant to dismiss for lack of personal jurisdiction. The court, having considered the record and having heard oral argument on this matter, finds and concludes that the motion should be denied.

This case arises in this court on the basis of several jurisdictional predicates, one of which is diversity jurisdiction. Plaintiffs assert that defendant has utilized their promotional literature—including a picture of one of the plaintiffs without her consent—to enhance the marketability of its own line of products. Thus, plaintiffs contend that defendant has violated Florida Statute Section 540.08. This provision establishes a cause of action when one commercial entity utilizes the portrait of an individual without consent for "purposes of trade or for any commercial or advertising purpose . . ." Defendant argues, in its motion to dismiss, that this court lacks *in personam* jurisdiction herein.

Defendant is an out-of-state resident, incorporated and with its principal place of business in Pennsylvania. Under Rule 4 of the Federal Rules of Civil Procedure, this court has personal jurisdiction with regard to those parties over which a state court would have personal jurisdiction. Thus, the resolution of this issue of personal jurisdiction hinges on this court's interpretation of the scope of the Florida Long Arm Statute, F.S. § 48.19.

## 1. *The Long Arm Test*

The Florida Long Arm Statute states, *inter alia,* that the state courts of Florida are possessed of personal jurisdiction over a non-resident defendant when such party has committed a "tortious act" within the state. On its face, this statute would appear to support plaintiffs' position as to this court's personal jurisdiction in this matter. However, the resolution of this question requires a two-pronged inquiry. First, the court must decide whether the particular state long arm statute would cover the situation *sub judice*—a question which must be answered in the affirmative herein. Second, having answered this question in the affirmative, the court then must determine whether the statute comports with the requirements of the Due Process Clause of the Constitution. As was stated in *Margoles v. Johns,* 157 U.S.App.D.C. 209, 217, 483 F.2d 1212, 1220 (1973):

When considering the applicability of any long-arm statute to a particular fact situation, courts invariably engage in a two-prong analysis. It is necessary initially to determine whether the statute by its language would permit service of process on a non-resident defendant, and *secondly, whether service under the statute would nonetheless contravene the due process clause of the federal constitution.* (emphasis added).

This is the question upon which this opinion focuses.

This court must inquire as to whether the application of the Florida Long Arm Statute, in the present context, is consistent with the dictates of due process. Traditionally, due process has equated with the concept of "minimum contacts" —that is, a defendant is not within the personal jurisdiction of the court unless it has had sufficient contacts with the state to warrant the assertion of personal jurisdiction by the courts of that state. *See, International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). However, this requirement is not static in nature. It varies in relation to the manner in which the cause of action has arisen in each particular case. More specifically, when the cause of action arises from the defendant's conduct within the state, that conduct—be it ongoing or singular in occurrence—often has been deemed sufficient to serve as a predicate for the court's assertion of personal jurisdiction.

The primary case in this regard is *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Defendant, a Texas insurance company, mailed a reinsurance certificate to an individual who resided in California. That individual accepted the terms of the agreement sent to him and paid his premiums until his death. When the company was unwilling to pay the beneficiary of the policy upon the death of the insured, a suit was filed in California. Despite the paucity of contacts between the defendant insurance company and the forum state, the Supreme Court upheld the assertion of personal jurisdiction.

798

The *McGee* Court first discussed the importance of enforcing the requirements of the Due Process clause in such contexts. Noting that the strictures of due process had been recognized in this area as far back as the landmark case of *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877), the court nevertheless emphasized that "[i]t is sufficient for the purposes of due process that the suit was based on a contract which had substantial connection with that State." *McGee,* supra, 355 U.S. at 223, 78 S.Ct. at 201 (emphasis added). The "connection" characterized as "substantial" by the Court was as follows:

> The contract was delivered in California, the premiums were mailed from there and the insured was a resident of the State when he died.

*McGee,* supra, at 223, 78 S.Ct. at 201. Although this would inconvenience the defendant, inconvenience was not deemed a violation of due process.

### 2. The Tort Context

The *McGee* principle is equally applicable in the tort context. *Duple Motor Bodies, Ltd. v. Hollingsworth,* 417 F.2d 231 (9th Cir. 1969) is particularly significant in this regard. Plaintiff had suffered injury in Hawaii as a result of defendant's allegedly negligent construction of a coach. Defendant, who engaged in the manufacture of coaches in England, argued that it had made no appearance in Hawaii sufficient to support the invocation of personal jurisdiction. The Ninth Circuit disagreed.

The *Duple* court decided that the tort of negligence includes the injury which occurs. The injury, in *Duple,* clearly had occurred in Hawaii. Defendant contended, however, that this did not rise to the level of minimum contacts sufficient to satisfy the due process clause. According to the defendant, the negligent conduct allegedly responsible for the injury had not been "committed" within the forum; the defendant had not registered to do business in Hawaii; and the defendant never had placed a representative there nor had it owned property there. In addition, defendant argued that the only Hawaiian entity to which it had sold its coaches was the plaintiff's employer.

Even in these circumstances, the Ninth Circuit clearly decided that the tortious act committed by defendant in Hawaii (i. e. the act being "in Hawaii" as a result of the fact that the injury occurred there) was dispositive of the matter before it. The *Duple* court focused on the fact that a sale had been negotiated between an English entity and an Hawaiian entity and the former would have been apprised of the fact that its product was destined to arrive in Hawaii. Under these circumstances, the court did not

> regard it as offensive to fair play or substantial justice or an undue burden on foreign trade to require a manufacturer to defend his product wherever he himself has placed it, either directly or through the normal distributive channels of trade.

*Duple Motor Bodies,* supra, at 235. Significantly, the *Duple* court supported its finding with a citation to *McGee v. International Life Insurance Co.,* supra, characterizing it as an opinion which established that a "single contact with the forum [is] sufficient" for the invocation of long-arm jurisdiction. *Duple,* supra, at 235.

A more recent explication of this subject is contained in *Reilly v. P. J. Wolff & Sohne,* 374 F.Supp. 775 (D.N.J.1974). Here, plaintiff's claim was premised on defendant's allegedly negligent design and manufacture of a piece of equipment which was instrumental in producing his injury. Defendant was a German corporation which had never done business within New Jersey. In fact, its sole contact with New Jersey was limited to three contracts—contracts which it claimed to have negotiated and consummated in Germany.

Finding that the long-arm statute was applicable, the *Reilly* court proceeded to address the due process question. As a preliminary matter, the court noted that substantial contacts between the defendant and the forum state must exist before the court would subject an out-of-state defendant to its personal jurisdiction. However,

the *Reilly* court emphasized that this rule was not necessarily applicable in all factual contexts subsumed under the heading of long-arm jurisdiction.

The *Reilly* court analyzed this issue by grouping long-arm cases into three categories. The court noted that the two "typical" long arm situations were represented by *Pennoyer v. Neff,* supra, and *International Shoe Co. v. Washington,* supra. The court characterized the situation embodied in *Pennoyer* as one in which the defendant is actually present. The court then noted that in a situation comparable to that of *International Shoe Co.,* the defendant is "deemed" to be present. The third typical long-arm situation—the one before the court in *Reilly* and in the case *sub judice* —was distinguishable. This third situation arises

> when an attempt is made to sue a corporation which is neither *actually* then present in the forum state . . . nor *deemed* to be present because of repeated contacts with the forum . . . but, where, instead, the suit is *itself predicated* on an alleged wrong done to the plaintiff within the forum state arising out of a single or isolated act done by the defendant *within* the forum. This is precisely the case of *McGee v. International Life Insurance Co.*

*Reilly,* supra, at 778. (emphasis original)

After concluding that the "minimum contacts" rubric of due process was not intended as a limitation on this third type of factual context, the *Reilly* court was careful to emphasize that it had not wholly ignored the due process clause in its long-arm determination. Instead, it indicated, *sub silentio,* that the mandate of due process surfaces in different forms depending upon the factual context to which it is applicable.

More specifically, the *Reilly* court decided that the defendant had been involved in the alleged tort because in the course of negotiating the contract by which the piece of equipment came to the state of New Jersey, the defendant had transmitted correspondence to New Jersey from Germany. While this might not have been enough to support the invocation of long-arm jurisdiction in

the more typical long-arm case, it was sufficient here where the cause of action sounded in tort and it arose from the very same transaction by which the defendant came into contact with the forum state. The defendant knew that the machines, which were the subject of the new contract, would be operated in a New Jersey plant "probably by New Jersey workmen, and that such equipment, if defective, could cause severe injury to those workmen." *Reilly,* supra, at 781.

Due Process was satisfied because

> there is nothing improper, or unfair, much less unjust or violative of due process, in requiring a corporation which has, *although only once,* either actually by agent or constructively by mail, come into the jurisdiction to do an act of business therein, to return to the jurisdiction to defend itself when it is there charged with a wrong directly arising out of the specific act of business done by it within the forum state.

*Reilly,* supra, at 778.

*See, Black v. Acme Markets, Inc.,* 564 F.2d 681 (5th Cir. 1977) and *Eyerly Aircraft Co. v. Killian,* 414 F.2d 591, 595 (5th Cir. 1969).

In the case *sub judice,* the alleged shipping of samples of a product to a Florida corporation indicates that defendant was reasonably aware that such samples would enter the limits of this state and that they would be utilized by a commercial entity herein. According to the complaint, these samples gave rise to the claim that defendant was utilizing the unauthorized pictures of one of the plaintiffs and of one of plaintiffs' products. Plaintiffs claim that those actions placed them at a commercial disadvantage.

This court concludes that this case is most aptly characterized as a "type-three" long-arm case, as those terms were utilized by the *Reilly* court, supra. Therefore, the exercise of personal jurisdiction is entirely appropriate here.

This court further notes that the thrust of the complaint, as it was presented at the hearing held on this matter, was the procurement of injunctive relief. However, at that hearing, it appeared to this court that defendant had ceased engaging in the activ-

**800**

ities which had been the source of this controversy.

Therefore, in accordance with the arguments presented at the hearing on this matter, the court orders plaintiffs to submit, within twenty days, further pleadings indicating which of defendant's actions are still ongoing. In addition, the court orders plaintiffs to submit, within the same twenty day period, additional pleadings bearing on the nature of the damages incurred and orders defendants to answer same within ten days of the date of plaintiffs' filing. Thus, it is

ORDERED and ADJUDGED that the motion of defendant to dismiss be and the same is hereby denied. Further, it is

ORDERED and ADJUDGED that plaintiffs submit additional pleadings, pursuant to the directions outlined in the order, within twenty days of the date of this order. Finally, defendant must answer within ten days of the time that plaintiffs file their additional pleading in accordance with this order.

DONE and ORDERED in chambers at the United States District Courthouse, Miami, Florida, this 14th day of December, 1977.